## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA (FT. PIERCE DIVISION)

_____

SANDRA SHEPHERD and EARL SHEPHERD, individually,

            Plaintiffs,                                   Case No: 20-cv-14157

v.

U.S. BANK, NATIONAL ASSOCIATION, AS
TRUSTEE FOR STRUCTURED ASSET
INVESTMENT LOAN TRUST, MORTGAGE
PASS-THROUGH CERTIFICATES SERIES
2005-4 AND DOES 1-10 INCLUSIVE,

            Defendants.

_____

## COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND TO QUIET TITLE TO CERTAIN RESIDENTIAL REAL PROPERTY

Plaintiffs, SANDRA SHEPHERD and EARL SHEPHERD (hereafter "Plaintiffs" unless referred to individually), through their undersigned counsel, file and serve their Complaint for Declaratory Relief, Injunctive Relief, and to Quiet Title to certain residential real property against Defendants U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR STRUCTURED ASSET INVESTMENT LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-4 (hereafter "USBTE") and DOES 1-10, and state:

A. Introduction, Parties, and Jurisdiction

1. This is an action which is brought pursuant to the Declaratory Judgments Act, 28 U.S.C. sec. 2201(a) and 28 U.S.C. Rule 57 for the purpose of obtaining a judicial declaration of all rights, title, and interest in a certain residential mortgage loan contract, and as to rights, title, and interest in certain real property including quieting title thereto, and for other relief.

2.   Plaintiffs are and were at all times material hereto *sui juris* residents of the State of New York and the owners of the Property which devolved to Plaintiffs after the passing of one Dorrel A. Morgan, who was the mother of Plaintiff SANDRA SHEPHERD. Dorrel A. Morgan was the previous owner and titleholder to the Property identified herein *infra*.

3.   Defendant USBTE is a foreign (non-Florida incorporated) investment banking entity which claims to be the "trustee" for a securitized mortgage loan trust (the STRUCTURED ASSET INVESTMENT LOAN TRUST 2005-4, hereafter the "Trust") which was formed in connection with the issuance and sale of a series of mortgage-backed securities (the MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-4, hereafter the "MBS") which were collateralized, in part, by the assets of the Trust. For purposes of this action, Defendant USBTE's address is 425 Walnut Street, Cincinnati, Ohio 45202. Defendant USBTE is subject to the jurisdiction of this Court as it regularly transacted business in the State of Florida, and as it previously sought to foreclose on the Property.

4.   Defendants DOES 1-10 are included for purposes of adding any additional, necessary, and/or indispensable parties who may be revealed in discovery.

5.   Jurisdiction of this Court is proper pursuant to 28 USC sec. 1332, as there is complete diversity between the parties and as the amount in controversy exceeds Seventy-Five Thousand and 00/100 U.S. Dollars ($75,000.00). Jurisdiction is also proper pursuant to 28 USC sec. 1331 as at least one claim is asserted under a Federal statute.

6.   Jurisdiction of the pendent state-law claim for Quiet Title is proper pursuant to 28 USC sec. 1367(a) (supplemental jurisdiction) as the claim for Quiet Title is so related to the claim for Declaratory Relief brought pursuant to 28 USC sec. 2201 *et seq.* that it forms part of the same case and controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 USC sec. 1391(b)(2) as the Property which is the subject of this action is situated within the jurisdiction of this Court. The Property address is 7405 Laurels Place, Port St. Lucie, Florida, and is legally described as LOT 2, OF PARCEL 15A AT THE RESERVE, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 28, AT PAGES 18 AND 18A, OF THE PUBLIC RECORDS OF ST. LUCIE COUNTY, FLORIDA (hereafter "the Property").

8. All transactions and occurrences material hereto took place within the jurisdiction of this Court and were directed toward Florida.

B. Background Material Facts

9. On January 28, 2005, non-party Dorrel A. Morgan executed and delivered a Note and Mortgage in favor of non-party Finance America LLC. The Better Business Bureau (hereafter "BBB") has published that Finance America LLC is no longer in business, and the telephone number listed by the BBB (that being (800) 303-4944) automatically disconnects when it is dialed. The telephone number listed on Finance America LLC's company profile (that being (949) 440-1000) answers with without identifying that it belongs to Finance America LLC and with a message that "this number is available for your marketing needs".

10. Dorrel A. Morgan passed away on May 18, 2012. The Property devolved to Plaintiffs as heirs of Dorrel A. Morgan as part of St. Lucie County, Florida Circuit Court Case No. 2013 cp 617.

11. The Circuit Court in and For St. Lucie County, Florida has determined, in connection with an In Rem Final Judgment of Foreclosure dated March 10, 2020 in 19th Judicial Circuit Case No. 2018-CA-942, that Plaintiffs are the heirs of Dorrel A. Morgan and succeeded to the interest in the Property, and became liable for the claimed mortgage debt of Dorrel A. Morgan which is

associated with the Property. The asset represented by the claimed liability on the Note (which liability devolved to the Plaintiffs by virtue of the matters set forth in paragraph 11 above), and the asset represented by the residential real Property the subject of the litigation referred to above are being used by Defendant USBTE in connection with its unilateral modification of the mortgage loan contract as set forth more fully hereinbelow, which use is ongoing.

12.   The subject Final Judgment is currently on appeal in the Florida Fourth District Court of Appeal (hereafter "4th DCA"), with Plaintiffs having filed a Notice of Appeal of the aforementioned Final Judgment on March 30, 2020, and with the 4th DCA assigning Case No. 4DCA 20-0876 to the subject appeal. No sale of the Property has taken place and no Certificate of Title has issued as of the date of the filing of this Complaint.

13. Finance America LLC was a registered and licensed residential mortgage lender. Defendant USBTE, which claims to have inherited the rights to the Morgan mortgage loan from the defunct Finance America LLC, is a commercial investment bank. It is not a residential mortgage lender. Defendant USBTE operates as an entity which bundles mortgage loans into portfolios and sells the portfolios to various securitization trusts to serve as collateral for commercial/business investments including mortgage-backed securities.

14.   Defendant USBTE has admitted that the Morgan loan was part of a mortgage-backed securities transaction, and has also admitted in writing that "the borrower" is a party to any mortgage-backed securities transaction. There is no issue that the Morgan loan was part of the mortgage-backed securities transaction which involved, *inter alia*, the creation and operation of the Structured Asset Investment Loan Trust 2005-4.

15. However, at no time whatsoever did Defendant USBTE notify Morgan, or the Plaintiffs as successors to the Morgan loan, that the loan could or would be converted from a

4

regulated residential mortgage loan transaction into an unregulated commercial investment transaction whereby the loan was to be commingled with hundreds or thousands of other loans for the purpose of providing partial collateral security for one or more commercial investments and to provide an income stream to various non-parties to the loan transaction which never lent any money to either Morgan or the Plaintiffs and to which neither Morgan nor the Plaintiffs ever owed any money. The intentional nondisclosure was part of a well-planned scheme to defraud the borrower through a fraud by omission paradigm, with the disclosures not being made in order to induce Morgan to execute the loan documents. Had Morgan been advised of the truth, she would never have agreed to enter into the loan transaction.

16.  Although certain provisions of the loan documents set forth in general terms that the loan could be sold, there are no disclosures which provide that upon any such sale that the essential character of the loan will be changed from a regulated residential mortgage loan transaction into an unregulated commercial investment transaction whereby monthly payments would be used to pay numerous non-parties to the loan transaction. The intentional nondisclosure was part of a well-planned scheme to defraud the borrower through a fraud by omission paradigm, with the disclosures not being made in order to induce Morgan to execute the loan documents. Had Morgan been advised of the truth, she would never have agreed to enter into the loan transaction.

17.  Sometime between origination of the loan and the present, Defendant USBTE and its agents caused the loan to be commingled with hundreds or thousands of other loans for the purpose of modifying the loan obligation to change the essential nature thereof from a regulated residential mortgage loan transaction to an unregulated commercial investment transaction for the purpose of providing partial collateral security for one or more commercial investments and

supplying an income stream to numerous non-parties to the loan, none of which were ever disclosed to either Morgan or the Plaintiffs. The intentional nondisclosure was part of a well-planned scheme to defraud the borrower through a fraud by omission paradigm, with the disclosures not being made in order to induce Morgan to execute the loan documents. Had Morgan been advised of the truth, she would never have agreed to enter into the loan transaction.

18. Any alleged transfer of the Morgan loan from the defunct Finance America LLC to Defendant USBTE resulted in a unilateral, and thus unenforceable, modification of the Federally-regulated residential mortgage loan contract into an unregulated commercial investment transaction involving several private equity investment concerns and not a Federally-regulated mortgage lender, which neither Morgan nor the Plaintiffs were ever informed or and never consented to. The contractual obligation was materially altered from repaying a loan on a Note as part of a residential mortgage loan transaction to a regulated residential mortgage lender, to paying an income stream to a servicer for a securitization trust for purposes of providing partial collateral security for one or more commercial investments and for providing a vehicle for paying various non-parties to the loan transaction such as the master and sub-servicers, the expenses of a commercial investment securitization trust, and the investors in the MBS, none of which loaned any money to either Morgan or the Plaintiffs. The intentional nondisclosure was part of a well-planned scheme to defraud the borrower through a fraud by omission paradigm, with the disclosures not being made in order to induce Morgan to execute the loan documents. Had Morgan been advised of the truth, she would never have agreed to enter into the loan transaction.

19. Defendant USBTE also never disclosed to either Morgan or the Plaintiffs that their personal information would be sold and used by Defendant USBTE and its agents to create other commercial investment opportunities, including "exotic" investments such as synthetic

derivatives, which provided additional profits to Defendant USBTE without any new consideration to either Morgan or the Plaintiffs. The intentional nondisclosure was part of a well-planned scheme to defraud the borrower through a fraud by omission paradigm, with the disclosures not being made in order to induce Morgan to execute the loan documents and so that Defendant could reap significant profits without compensating Morgan. Had Morgan been advised of the truth, she would never have agreed to enter into the loan transaction.

20. After "sale" of the loan to the Trust, the servicer for the Trust (in concert with the "investor" "trustee" bank) creates a phantom obligation by which the borrower is to make payments "under the Note" despite the fact that the payments are made to numerous non-parties to the loan transaction, thereby materially altering the obligation from one where payments are intended to be made toward the residential mortgage promissory Note obligation into one where the payments are used to fund and provide collateral for commercial investments and an income stream to pay numerous non-parties to the loan transaction with no consideration being provided to the borrower or successors thereto (e.g. Plaintiffs) in connection therewith, and with no notice to or consent from the borrower or the borrower's successors to pay non-parties to the loan transaction. The intentional nondisclosure was part of a well-planned scheme to defraud the borrower through a fraud by omission paradigm, with the disclosures not being made in order to induce Morgan to execute the loan documents. Had Morgan been advised of the truth, she would never have agreed to enter into the loan transaction.

21. The cash flow stream from the monthly payments made as a result of the phantom obligation is used to pay the Trustee, the investors in the MBS, the expenses of maintaining the Trust, and to the investors in the MBS with no such monthly payments being used to reduce principal or interest under the Note. The creation of the phantom obligation was a unilateral

modification of the loan contract which was effected by Defendant USBTE and its agents for the express purpose of using payments made to provide an income stream to pay numerous non-parties to the loan transaction which provided no monies to the borrower; which neither Morgan nor Plaintiffs were ever advised of; never consented to; and for which no additional consideration was provided to them. The intentional nondisclosure was part of a well-planned scheme to defraud the borrower through a fraud by omission paradigm, with the disclosures not being made in order to induce Morgan to execute the loan documents. Had Morgan been advised of the truth, she would never have agreed to enter into the loan transaction.

22.   No disclosure of these facts are ever made to the borrower, and the "Your loan may be sold" language in the mortgage documents is an incomplete and misleading statement, as:

(a)  it does not accurately state that upon such sale to a securitization Trust, the phantom obligation is created and that a new obligation to pay third parties who were not the "lender" will be created, thus modifying the essential nature of the contract from a residential mortgage loan contract to an unregulated commercial investment;

(b)  it is not disclosed that the "loan" obligation would be used to provide partial collateral security for and/or to fund one or more commercial investments;

(c)  it is not disclosed that personal information of the borrower will be sold and used to create additional investment opportunities including "exotic" investments such synthetic derivatives resulting in profits to Defendant USBTE without compensation or consideration to the borrower or the borrower's successors;

(d)  it is not disclosed to the borrower that what was a residential mortgage loan transaction governed and protected by the Federal government and Federal lending laws will be converted

into an unregulated and unprotected private equity investment vehicle for purposes of generating profits to numerous non-parties to the loan transaction.

23.   The intentionally incomplete and misleading nature and substance of the "your loan may be sold" language in the loan documents was part of a well-planned scheme to defraud the borrower through a fraud by omission paradigm, with the disclosures not being made in order to induce Morgan to execute the loan documents. Had Morgan been advised of the truth, she would never have agreed to enter into the loan transaction.

24.   By converting the residential mortgage loan transaction into a commercial investment vehicle, Defendant USBTE, with the apparent aid and assistance of various "servicers", has effected a unilateral modification of the mortgage loan contract without prior knowledge of or consent from Morgan or the Plaintiffs which unilateral modification continues and is ongoing, and has allegedly made itself a party to the mortgage loan contract for its own self-interest at the expense of and without compensation to the borrower and the borrowers' successor (including the Plaintiffs herein).

25.   Florida law prohibits the unilateral modification of a contract without mutual consent, without a meeting of the minds, and without consideration for such modification.

26.   Neither Morgan nor Plaintiffs ever consented to Defendant USBTE, which is a private equity investment entity and not a Federally-regulated residential mortgage lender, becoming a party to the residential mortgage loan contract or unilaterally modifying it to convert it into a commercial investment vehicle for the purposes of (a) providing partial collateral security for a commercial investment; (b) providing monies to third parties who never lent Morgan or the Plaintiffs any money; and/or (c) for the purpose of using the borrower's and the

9

Plaintiffs' personal information to create additional investment vehicles and opportunities which benefitted Defendant USBTE without compensation or consideration to Morgan or the Plaintiffs.

27. At all times material, Defendant USBTE had actual knowledge that it intended to convert the residential mortgage loan into a commercial investment vehicle for the purpose of providing a revenue stream, together with hundreds of other alleged "residential" mortgage loans, to fund numerous non-residential mortgage loan transactions, including but not limited to:

(a) payment to the securitization Trustee (Defendant USBTE) ;

(b) payment to the Master Servicer;

(c) payment to the subservicer;

(d) payment of "expenses" of the securitization Trust; and, if any monies remained after payment of these expenses,

(e) payment to the investors in the MBS.

28. Defendant USBTE intentionally failed to disclose these material facts to either Morgan or the Plaintiffs, doing to in order to induce Morgan to make payments on the loan. The intentional nondisclosure was part of a well-planned scheme to defraud the borrower through a fraud by omission paradigm, with the disclosures not being made in order to induce Morgan to execute the loan documents. Had Morgan been advised of the truth, she would never have agreed to enter into the loan transaction.

29. The Morgan loan was pooled with thousands of other loans for the purpose of providing partial collateral security in connection with the issuance of the MBS, resulting in the loan not being owned by any single party and with the rights to the income stream from the loan being purchased and claimed by multiple parties including those identified in paragraph 27 above. This material change in the essential character of the loan, which was known to Defendant

USBTE at all times material, was never disclosed to either Morgan or the Plaintiffs and was intentionally withheld from them in order to induce Morgan to make payments on the loan and subordinate her (and Plaintiffs') interest in the Property.

<u>**COUNT I: DECLARATORY AND OTHER RELIEF**</u>

30.  Plaintiffs reaffirm and reallege paragraphs 1 through 29 above as if set forth more fully hereinbelow.

31.  This is an action for Declaratory Relief which is brought pursuant to 28 USC sec. 2201 *et seq.*

32.  28 USC sec. 2201(a) expressly provides that in a case of actual controversy within its jurisdiction that the court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

33.  This action concerns a determination of the parties' legal rights in view of the fraudulent actions of Defendant USBTE as set forth above.

34.  28 USC sec. 2202 expressly provides that further necessary or proper relief based on a declaratory judgment or decree may be granted. By way of Plaintiffs' assertion of Count II of this Complaint for Quiet Title and the request herein for injunctive relief, Plaintiffs seek such further relief to quiet title to the Property and an Injunction prohibiting any sale or transfer of the Property until the merits of this action have been ultimately determined.

35.  The facts set forth above constitute and give rise to a definite, concrete, real, and substantial controversy touching the legal rights and relations of the parties and their adverse interests, with this claim specific relief through a decree of conclusive character: to wit, whether Defendant USBTE or any other entity, if any, has any enforceable interest in either the Note or

the Mortgage given Defendant USBTE's unilateral modification of the mortgage loan contact and repeated acts of fraudulent conduct in doing so.

36. The instant action is ripe for determination in view of a scheduled sale of the Property which has been scheduled to take place on August 4, 2020.

37. In view of Defendant USBTE's unilateral modification of the mortgage loan contract which renders the unilaterally modified contract unenforceable as a matter of law, Plaintiffs have a substantial likelihood of success on the merits of this claim for Declaratory Relief.

38. If an injunction prohibiting any foreclosure pending the determination of this action on the merits is not entered, the Plaintiffs will suffer irreparable harm in the form of the loss of the Property which Property is unique and not replaceable by mere money.

39. The totality of the circumstances and balance of the equities tips in the Plaintiffs' favor.

40. The requested injunction is in the public interest, as the public has an interest in not having Federally regulated residential mortgage loan contracts unilaterally modified into unregulated commercial investment contracts, and where the modification was made without prior knowledge or consent, without any meeting of the minds, and without any new consideration being paid, all of which are required by Florida law in order to legally modify a contract.

41. The requested injunction preserves the status quo, but does not afford the Plaintiffs all of the relief which they could receive at the conclusion of a full trial on the merits.

42. The requested injunction against any sale of the Property is not prohibited by the Anti-Injunction Act, 28 U.S.C. sec. 2283, as the requested injunction is necessary to aid this Court in its jurisdiction over the Property and is requested to preserve the status quo of the

Property so that this Court may protect and effectuate its ultimate Judgment(s) to be entered herein.

WHEREFORE, Plaintiffs request that this Court enter a Declaratory Judgment, an Order of Disgorgement, and a preliminary injunction as follows:

(a)  that Defendant USBTE has unilaterally modified the mortgage loan contract and has done so without knowledge of the borrower or Plaintiffs or consent thereof, without any meeting of the minds, and with no new consideration being paid for the subject modification rendering the unilaterally modified contract  unenforceable as a matter of law; and

(b)  a disgorging of all profits obtained by Defendant USBTE and any agent thereof as a result of the sale or use of Morgan's or the Plaintiffs' personal information for the purpose of creating or supporting investment vehicles or opportunities created by Defendant USBTE and/or its agents for which no compensation or consideration was paid to the Plaintiffs; and

(c)   a preliminary injunction prohibiting and precluding the continuation of any foreclosure proceedings, including but not limited to any sale of the Property, pending a full determination on the merits of the claims in this action; and

(d)  a permanent injunction forever barring Defendant USBTE or any agent thereof from undertaking any action to seek enforcement of the Note or Mortgage; and

(e)  for any other and further relief which is just and proper.

## COUNT II: QUIET TITLE

43.  Plaintiffs reaffirm and reallege paragraphs 1 through 29 above as if set forth more fully hereinbelow.

44.  Pursuant to Florida Statute § 65.061 regarding quiet title:

**(2) Grounds.--**When a person or corporation not the rightful owner of land has any conveyance or other evidence of title thereto, or asserts any claim, or pretends to have any right or title thereto, which may cast a cloud on the title of the real owner, or when any person or corporation is the true and equitable owner of land the record title to which is not in the person or corporation because of the defective execution of any deed or mortgage because of the omission of a seal thereon, the lack of witnesses, or any defect or omission in the wording of the acknowledgment of a party or parties thereto, when the person or corporation claims title thereto by the defective instrument and the defective instrument was apparently made and delivered by the grantor to convey or mortgage the real estate and was recorded in the county where the land lies, or when possession of the and has been held by any person or corporation adverse to the record owner thereof or his or her heirs and assigns until such adverse possession has ripened into a good title under the statutes of this state, such person or corporation may file complaint in any county in which any part of the land is situated to have the conveyance or other evidence of claim or title canceled and the cloud removed from the title and to have his or her title quieted, whether such real owner is in possession or not or is threatened to be disturbed in his or her possession or not, and whether defendant is a resident of this state or not, and whether the title has been litigated at law or not, and whether the adverse claim or title or interest is void on its face or not, or if not void on its face that it may require extrinsic evidence to establish its validity. A guardian ad litem shall not be appointed unless it shall affirmatively appear that the interest of minors, persons of unsound mind, or convicts are involved.

45. Plaintiffs are currently in possession of the Property, and the In Rem Final Judgment of Foreclosure is on appeal.

46. Plaintiffs remain the titleholders to the Property as (a) no foreclosure sale has taken place and thus (b) no Sale Deed or Certificate of Title has been issued.

47. A cloud on title to the Property exists as a direct result of Defendant USBTE's actions which has diminished the value of the Property.

48. There are competing interests to the title to the Property which must be adjudicated in order that title to the Property be quieted.

WHEREFORE, Plaintiffs request that this Court issue a Judgment and Decree which removes the cloud on title to the Property created by Defendant USBTE is removed and that title

to the Property is fully and clearly vested in Plaintiffs without any lien or other cloud of Defendant USBTE, and for any other and further relief which is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand, pursuant to *Fed. R.Civ.P.* 39(a)(2), 38, and 57, trial by jury of all matters so triable as a matter of right and as provided by law. *Gulf Life Ins. Co. v.* Arnold, 809 F.2d 1520, 1523 (11th Cir. 1987); Waldrop *v. S. Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994); 7th Amendment to the United States Constitution.

Dated this 19th day of May, 2020.

By: _____/s/___*Jeff Barnes, Esq.*_____

Jeff Barnes, Esq.
W.J. Barnes, P.A.
Counsel for Plaintiffs
1515 North Federal Highway, Suite 300
Boca Raton, Florida 33432
Tel: (561) 864-1067
Fax: (561) 338-4840